United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINA GALVAN NAVARRO,<br><br>    Plaintiff,<br><br>  v.<br><br>ESKANOS & ADLER, A PROFESSIONAL CORPORATION, a California Corporation, DONALD ROGERS STEBBINS, individually and in his official capacity, and KURTISS JACOBS, individually and in his official capacity,<br><br>    Defendants.<br>_____/ | No. C 06-02231 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In this action under the Fair Debt Collection Practices Act, both plaintiff and defendants move for summary judgment on all claims. Plaintiff filed a separate motion for partial summary judgment as to defendants' use of the bona fide error defense. Triable issues of material fact remain as to whether defendants violated the FDCPA, and whether violations are excused by the bona fide error defense. Accordingly, plaintiff's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART,** and her motion for summary judgment as to defendants' bona fide error defense is **DENIED**. Defendants' motion for summary judgment is **DENIED**.

## STATEMENT

Plaintiff Evangelina Galvan Navarro filed this action against defendants Eskanos & Adler, a Professional Corporation, Kurtiss Jacobs, and Donald Stebbins for violations of the

federal Fair Debt Collection Practices Act and the California Rosenthal Fair Debt Collection Practices Act. This action concerns two collection letters sent by defendants to plaintiff. Navarro has claimed no actual damages, so the maximum damages award in this action is $2,000. Plaintiff and defendants agree on many of the facts.

*Navarro's Dealings With Eskanos & Adler*.

Some time before June 2005, plaintiff incurred a debt on her Discover credit card for personal, family, and household expenses (Schwinn Opp. Decl. Exh. J, 52:15–20). The debt was assigned to defendant Eskanos & Adler for collection on June 6, 2005 (Steinheimer Decl. Exh. A). Eskanos & Adler mailed a letter to plaintiff on or about June 8, 2005 in an attempt to collect (*id*. at Exh. E). The letter was printed on letterhead identifying Eskanos & Adler as a law firm. It was signed by defendant Donald Stebbins on behalf of Eskanos & Adler as an "Attorney for the Firm" (*ibid*.). Before signing, Stebbins reviewed the address block to confirm that the address was valid and reviewed the amount of the debt to make certain that it met the client's criteria for collection (Schwinn Opp. Decl. Exh. B, 18:4–14).

On June 17, 2005, Eskanos & Adler received a letter from Navarro asking that defendants stop telephoning her and contact her only by mail (Steinheimer Decl. Exh. B). It also stated that Navarro and her family were having financial problems and were considering filing bankruptcy (*ibid*.). After receiving this letter, Carol Saburomaru, a manager at Eskanos & Adler, changed the account status to "DNC" and removed the telephone numbers from plaintiff's account (*id*. at Exh. A; Schwinn Defense Decl. Exh. E 69:20–71:3). "DNC" was used interchangeably for "Do Not Call" or "Do Not Contact" (*id*. at 71:15–72:3).

Defendants received a second letter from plaintiff on June 27, 2005, which stated "I hereby request that you CEASE and DESIST any and all efforts to collect on the above referenced account" (Steinheimer Decl. Exh. C). It also stated that should Eskanos & Adler wish to file suit against her, she considered herself judgment proof because she owned no property (*ibid*.). The letter was received by Melodie Mansfield, the employee designated to open all certified mail. She made a notation in the computer system that a cease-and-desist letter had been received on Navarro's account (Schwinn Decl. Exh. F, 24:5–12). Instead of being directed

to a manager per in-house procedures, it was routed to a collector working on the file (Hanestad Decl. ¶ 4).

Navarro's letter went to Gail Dowdy, a debt collector. She entered a notation in the computer system regarding the letter but did not note that it was a cease-and-desist letter (Schwinn Decl. Exh. H, 24:5–12). Navarro's file was then moved into a "close queue" to be reviewed by Dowdy's supervisor, Carol Saburomaru (*id*. at 31:14–15). Neither Dowdy nor Saburomaru marked the mail return field with a "Y." Doing so would have made the computer system believe that mail had been returned from that address. No more collection letters could then be generated for that account. Saburomaru reviewed the file and decided that a search for plaintiff's assets was appropriate (*id*. at Exh. E, 77:18–78:13). The file was transferred to another collector, Keith Williams, to perform the search (Hanestad Decl. at ¶ 6–7).

Williams recommended that another letter be sent to Navarro (Schwinn Decl. Exh. A, at 68:14–20). On August 1, 2005, defendants sent a letter asking plaintiff to contact them to attempt to settle the account on a voluntary basis (Steinheimer Decl. Exh. D). The letter was on Eskanos & Adler's letterhead. It was signed by defendant Kurtiss Jacobs. Jacobs was a staff attorney at Eskanos & Adler, but the letter did not identify him as such (*ibid*.). The names of three other of Eskanos & Adler's attorneys, Donald Stebbins, Jerome Yalon, and Janet Brown, appeared in the signature block, but none were identified as attorneys. As with the prior letter, Jacobs reviewed the letter for a valid address and a sufficient amount of debt before signing it (Schwinn Decl. Exh. A, 31:8–32:22).

On August 8, 2005, plaintiff sent a third letter to Eskanos & Adler asking them to stop all communications. Her file was closed on October 5, 2005, when Eskanos & Adler received notice that Navarro had filed for bankruptcy. Her debt to Discover was discharged in January 2006, pursuant to her bankruptcy filing.

*Defendant's Debt-Collection Procedures*.

Eskanos & Adler identified itself as a debt-collection law firm (Eskanos Decl. ¶ 2). It attempted to collect on debts assigned to it without litigation, but generally its clients expected

3

the firm to file suit against debtors. It estimated that its attorneys ultimately file a lawsuit on approximately 30% of the accounts referred to it (*ibid*.).

Defendant Eskanos & Adler had a number of procedures in place to comply with the FDCPA. Their debt-collection employees underwent training in the law and the firm's procedures. The firm employed a full-time employee trainer, Rob Cannon (Hanestad Decl. ¶ 9). On beginning work for Eskanos & Adler, each employee was given a copy of its training and procedure guide which contained both training information and general information about employment (*id*. at ¶ 10). Employees were tested on the requirements of the FDCPA when they began work and about once per year thereafter (*id*. at ¶ 11). Collectors were monitored by their immediate managers who performed initial on-the-job training at the beginning of employment. Managers continued to monitor and audit employees' work for compliance with the FDCPA (*id*. at ¶ 12).

Eskanos & Adler declares that it had a general, overriding policy of not contacting debtors after the firm had received a "cease and desist" letter (Eskanos Decl. ¶ 10). It had a specific procedure for dealing with such letters. Defendants would (1) direct the letter to a manager for handling; (2) note in the file that such a letter was received; (3) change the status of the account to "DNC;" (4) remove the telephone numbers associated with the account; and (5) mark the mail return field with a "Y" to prevent the computer from generating letters to send to the account (Hanestad Decl. ¶ 5). It is not clear, however, which employees were ultimately responsible for performing the steps. The debtor's address was not removed from Eskanos & Adler's databases unless the debtor stated that he or she was represented by an attorney (Schwinn Decl. Exh. E, 126:14–127:4). At the time of the events of this case, the cease-and-desist procedure had not been written down and was related orally to employees (*id*. at Exh. I, 58:3–59:10).

*Procedural History*.

Plaintiff filed this action on March 26, 2006, naming Eskanos & Adler and four of its employees as defendants. Her complaint alleged violations of the FDCPA and the California Rosenthal Act. Her initial complaint was based solely on defendants' sending a collection letter

4

1  after she had sent them a cease-and-desist letter.  Navarro was granted leave to amend her
2  complaint in December 2006, to add allegations under 15 U.S.C. 1692e, e(3), and e(10), as well
3  as California Civil Code Sections 1788.16 and 1788.13(c).  These claims are based on
4  misrepresentation of the involvement of an attorney in the collections process.  On January 11,
5  2007, plaintiff filed a motion for summary judgment and a motion for partial summary judgment
6  as to defendants' use of the bona fide error defense.  Defendants filed their own summary
7  judgment motion.  Trial is set to begin on April 2, 2007.

8  Plaintiff lodged evidentiary objections to some of the declarations filed by defendants.
9  This includes the unsigned declaration of Keith Williams.  Later, defendants filed the declaration
10 of Dan Oditt, Eskanos & Adler's vice president, who declares that Williams was reluctant to sign
11 a declaration in support of these motions because plaintiff's process server had attempted to
12 bribe him (Oditt Decl. ¶ 5).  Furthermore, Andrew Steinheimer, defendants' counsel, declared
13 that plaintiff's counsel had told Williams that Eskanos & Adler was "blaming him for the
14 circumstances in this case or trying to pin liability on him" (Steinheimer Supp. Decl. ¶ 5).
15 Though certainly disturbing, these statements are clearly hearsay.  Plaintiff also contends that
16 this declaration was filed for an improper purpose and should be stricken from the record.
17 Plaintiff's application for an order striking the declaration of Dan Oditt is **DENIED**.  Plaintiff's
18 objections to Oditt's declaration as hearsay, however, are **SUSTAINED**.  Any other objections will
19 be dealt with as they figure into the disposition of these motions.

## ANALYSIS

21 Summary judgment should be granted where the pleadings, discovery, and affidavits
22 show "that there is no genuine issue as to any material fact and that the moving party is entitled
23 to judgment as a matter of law."  FRCP 56(c).  The moving party has the initial burden of
24 production to demonstrate the absence of any genuine issue of material fact.  *Playboy*
25 *Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023–24 (9th Cir. 2004).
26 Once the moving party has met its initial burden, the nonmoving party must "designate specific
27 facts showing there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24
28 (1986).  "If the moving party shows the absence of a genuine issue of material fact, the non-

moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citation omitted).

### 1. PLAINTIFF'S CLAIMS UNDER THE FDCPA.

Plaintiff argues that Eskanos & Adler, Stebbins, and Jacobs violated 15 U.S.C. 1692e(3) and 1692e(10) by falsely implying that an attorney had reviewed the file, falsely representing the involvement of legal counsel, and falsely representing the true source or nature of the letters. She also alleges that defendants violated California Civil Code Sections 1788.13(c) and 1788.16 by misrepresenting the role and involvement of an attorney in the collection process. Those four claims will be dealt with together because they involve the same facts. Her final claim is that defendants' violated 15 U.S.C. 1692c(c) by sending the second collection letter after she asked them to stop contacting her.

#### A. Plaintiff's Debt as a "Debt" and a "Consumer Debt."

First, plaintiff asks for summary judgment that her obligation to Discover was a "debt" as defined by the FDCPA and a "consumer debt" as defined by the California Rosenthal Act. Defendants do not dispute these issues.

The term "debt" is defined in 15 U.S.C. 1692a(5) as:

> [A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. . . .

Similarly, California Civil Code Section 1788.2(f) defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Plaintiff testified in her deposition that the debt was incurred for household and family expenses. Accordingly, her transaction is a "debt" under the federal Act and a "consumer debt" under the Rosenthal Act.

Plaintiff also moves for summary judgment on the issue of whether Eskanos & Adler is a "debt collector" under the California Rosenthal Act. California Civil Code Section 1788.2(c) defines a debt collector as "any person who, in the ordinary course of business, regularly, on

6

behalf of himself or herself or others, engages in debt collection.  [It] does not include an attorney or counselor at law."

The statute makes clear that it does not apply to attorneys.  The statute was silent, however, on law firms, and thus they can be debt collectors under the Rosenthal Act. *Ables v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 547–48 (N.D. Cal. 2005) (Ware, J.).  Defendants do not dispute that Eskanos & Adler's primary business is collecting debts that are assigned to it by its clients, and defendants do not argue otherwise in their briefs.  Thus Eskanos & Adler is a debt collector under the Rosenthal Act.  Accordingly, plaintiff's motion for summary judgment on these issues is **GRANTED**.

## B. Statute of Limitations.

Defendants argue that plaintiff's claims regarding the collection letter sent June 8, 2005, are barred by the statute of limitations.  The statute of limitations for actions under both the federal FDCPA and the Rosenthal Act is one year.  15 U.S.C. 1692k(d); Cal. Civ. Code § 1788.30(f).  Navarro filed her complaint on March 26, 2006, and then filed her amended complaint on December 7, 2006.  Defendants argue that the claims plaintiff added relating to the first letter are barred by the statute of limitations because they were filed more than one year after the letter was sent.  Furthermore, defendants contend, they cannot relate back to plaintiff's original claims.

Later-added claims are timely filed if they relate back to the original pleadings.  The relevant rule provides that "an amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . ."  FRCP 15(c).  Here, the new claims that plaintiff asserted arose out of the same conduct as her previous claims, Eskanos & Adler's sending collection letters to plaintiff.  The first letter was referenced in plaintiff's original complaint, and both letters arise from collection of the same debt by the same parties.  Accordingly, plaintiff's claims based on the first letter are not barred by the statute of limitations.

7

### C. Defendants' First Letter to Plaintiff.

In general, 15 U.S.C. 1692e forbids the use of false, deceptive or misleading representations in connection with collecting debts. More specifically, 15 U.S.C. 1692e(3) forbids "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney," and 15 U.S.C. 1692e(10) forbids "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer." California Civil Code Section 1788.13(c) forbids the use of:

> Any communication with a debtor in the name of an attorney or counselor at law or upon stationery or like written instruments bearing the name of the attorney or counselor at law, unless such communication is by an attorney or counselor at law or shall have been approved or authorized by such attorney or counselor at law.

Finally, California Civil Code Section 1788.16 states:

> It is unlawful, with respect to attempted collection of a consumer debt, for a debt collector, or an attorney, to send a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued, or approved by a government agency or attorney when it is not.

A violation of this statute is a misdemeanor punishable by imprisonment up to six months.

The least sophisticated consumer standard applies to violations of the FDCPA. *Wade v. Regional Credit Ass'n.*, 87 F.3d 1098, 1100 (9th Cir. 1996). The standard both "ensures the protection of all consumers, even the naive and the trusting, against deceptive collection practices, and protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clark v. Capital Credit Collection Servs.*, 460 F.3d 1162, 1180 (9th Cir. 2006) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d. Cir. 1993)). This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Swanson v. Southern Oregon Credit Serv.*, 864 F.2d 1222, 1227 (9th Cir. 1997).

"[T]he use of an attorney's letterhead and signature on the collection letters [is] sufficient to give the least sophisticated consumer the impression that the letters [are] communications from an attorney." *Clomon*, 988 F.2d at 1320–21. The least sophisticated consumer would not be deceived or misled as to attorney involvement if the communication contained a clear disclaimer stating that an attorney had not reviewed the file. *Greco v.*

8

1  *Trauner, Cohen, and Thomas LLP*, 412 F.3d 360, 365 (2d. Cir. 2005).  The Ninth Circuit has
2  not addressed the question of attorney involvement in the debt collection process.  Judge
3  Maxine Chesney, however, has held that the use of an attorney's signature is sufficient to
4  mislead the least sophisticated consumer into believing that an attorney was involved in the debt
5  collection process.  *Dupuy v. Weltman, Wienberg & Reis, Co.,* 442 F.Supp.2d 822, 825–26
6  (N.D. Cal. 2006).

7  Here, parties do not dispute that the letter was printed on Eskanos & Adler's letterhead
8  identifying them as a law firm.  Stebbins signed the letter as an "Attorney for the Firm."  The
9  letter both referenced a debt plaintiff allegedly owed and identified Eskanos & Adler as having
10 been retained by Discover to collect the debt.  The letter contains no disclaimer of an attorney's
11 involvement.  Parties also agree that Stebbins made only a cursory review of the letter before
12 signing it.  He signed perhaps hundreds of letters in a single day.

13 Plaintiff argues that Stebbins and Eskanos & Adler falsely represented or implied that
14 Stebbins had reviewed Navarro's file when he had not.  According to plaintiff, his signing the
15 letter would lead the least sophisticated consumer to believe that Stebbins had conducted a
16 professional review of the account. Defendants disagree and argue that there was no
17 misrepresentation of attorney involvement because another attorney within the firm, or at least
18 another employee, had reviewed the file.

19 Debt collectors are permitted to rely on representations from the creditor that the
20 underlying debt is valid.  *Clark*, 460 F.3d at 1174.  In *Clark*, it was reasonable for the defendant
21 debt collectors to rely on information from clients to determine whether or not the statute of
22 limitations had run.  Here, defendants present evidence that new accounts were referred to the
23 firm by its clients, in Navarro's case, Discover.  An attorney at Eskanos & Adler then reviewed
24 the file to check that it met the client's criteria for filing suit and that the statute of limitations
25 had not run.  The information was then entered into the firm's computers and the collections
26 process commenced.  Here, defendants relied on the client and its own employees to use  their
27 judgment to decide whether to send a collection letter and whether the contents of the letter
28 were appropriate.  It was reasonable for them to do so, however, that does not foreclose the

9

possibility that the least sophisticated consumer would think that the letter had come directly from an attorney.

Here, both parties have moved for summary judgment. Viewing the facts in the light most favorable to the defendant, a reasonable jury could still conclude that the least sophisticated consumer would have believed that a lawyer was involved in the collections process. Viewing the facts in the light most favorable to the plaintiff, a reasonable jury could still find that the opposite was true. Accordingly, both plaintiff's and defendants' motions for summary judgment on plaintiff's claims under Sections 1692e(3) and 1692e(10) of the FDCPA, and plaintiff's Rosenthal Act claims are **DENIED**.

### D. Claims Related to the Second Letter.

As to the second collection letter, plaintiff alleges that Eskanos & Adler and Jacobs falsely represented that Jacobs, an attorney, had reviewed the file, falsely represented the role and involvement of legal counsel, and falsely represented the true source or nature of the letter.

The major difference between the first letter and the second letter is that the signer of the second letter did not specifically identify himself as an attorney. It was signed by Kurtiss A. Jacobs on behalf of Eskanos & Adler. The names of Donald Stebbins, Janet Brown, and Jerome Yalon Jr. appeared in the signature block as well, but none of them were identified as attorneys. This letter was printed on letterhead identifying Eskanos & Adler as a law firm. The letter told Navarro to contact defendants' office immediately to discuss the voluntary resolution of her account. The parties agree that before signing, Jacobs merely checked the address block to ensure that it showed a valid address and checked the amount of the debt.

Defendant argues that the least sophisticated consumer could not possibly be deceived into thinking that an attorney had sent this letter because the person signing it did not identify himself as such. The letter left no doubt, however, that it was sent by a law firm. As with the first letter, there remains a triable issue of fact as to whether the least sophisticated consumer would be deceived into thinking that an attorney had sent the letter. Accordingly, both plaintiff's and defendants' motions for summary judgment are **DENIED**.

Plaintiff also brings a claim under the California Rosenthal Act. California Civil Code Section 1788.17 requires that debt collectors comply with the FDCPA. As neither motion for summary judgment was granted on plaintiff's federal claims, both motions for summary judgment on this claim will be **DENIED** as well.

### E. Navarro's Cease-and-Desist Letter.

Finally, plaintiff contends that Eskanos & Adler violated 15 U.S.C. 1692c(c) by contacting Navarro after she had asked them in writing to cease collection efforts. Section 1692c(c) stated in pertinent part:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to that debt. . . .

Here, neither party disputes that defendants received a letter asking plaintiffs to stop contacting her on June 27, 2005, and that defendants sent the second collection letter after that on August 1, 2005. Indeed, defendants only argue that they are entitled to the bona fide error defense for claim. Accordingly, plaintiff's motion for summary judgment is **GRANTED** as to this claim, subject to the bona fide error defense.

### 2. BONA FIDE ERROR DEFENSE.

Both plaintiff and defendants move for summary judgment as to the bona fide error defense as applied to defendants' violation of 15 U.S.C. 1692c(c). The defense is available if "the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. 1692k(c). The same standard also applies under the Rosenthal Act. Cal. Civ. Code § 1788.30(e). "To qualify for the bona fide error defense, a debt collector must show that: (1) the FDCPA violation was not intentional; (2) the FDCPA violation resulted from a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Palmer v. I.C. Systems, Inc.*, 2005 WL 3001877, *7 (N.D. Cal. 2005) (Whyte, J.) (citing *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005)).

11

First, defendants must show that sending the second letter to plaintiff was unintentional. Parties agree that the decision to send the second collection letter was made by Keith Williams, a debt collector assigned to the account. Plaintiff contends that absent evidence that Williams sent the letter unintentionally, the bona fide error defense fails. By the time Navarro's account got to Williams, however, the error had already been made. Navarro's letter had been misdirected and the mail return code had not been changed to "Y." Williams intent seems not relevant here. Plaintiff also points out that defendants have presented no evidence that Jacobs' signing the letter was unintentional. His intent also seems irrelevant for the same reason. The error had already been made. Both parties agree, however, that the final step of changing the mail return code was not performed. It is not clear, however, who had responsibility for doing so.

Defendants present evidence that they employed procedures reasonably adapted to prevent errors. Eskanos & Adler stated that its policy was to cease communications with anyone who had sent them a cease-and-desist letter. Employees were trained in compliance procedures for the FDCPA, employees received on-the-job training from their managers, and managers continued to monitor and audit employees work thereafter. On receiving a cease-and-desist letter, the letter was to be directed to a manager, the telephone numbers were to be removed from the account, the file was noted "cease-and-desist," the status code was changed to "DNC," and a "Y" was placed in the mail return field. Plaintiff does not dispute that these procedures exist currently. She does, however, point out that the procedure for "cease-and-desist" letters was not written down at the time of the events in this action. Viewing the facts in the light most favorable to plaintiff, a reasonable jury could find that Eskanos & Adler's procedures were not reasonably adapted to prevent the kind of error that occurred here. Viewing the facts in the light most favorable to the defendants, however, a reasonable jury could still conclude that Eskanos & Adler had sufficient procedures in place.

Accordingly, both plaintiff's and defendants' motions for summary judgment on this issue are **DENIED**. The issue of damages for this claim, as well as plaintiff's other claims, will be tried to a jury.

**CONCLUSION**

For all the above-stated reasons, plaintiff's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's motion for summary judgment on the bona fide error defense is **DENIED**. Defendants' motion for summary judgment is **DENIED**.

The foregoing will shorten the trial. Counsel shall meet and confer and agree on a statement to be read to the jury as to what has already been ruled on by this order. This must be submitted at the final pretrial conference. At the trial, evidence on only the ruled-on points will not be admissible, absent good cause.

**IT IS SO ORDERED.**

Dated: February 20, 2007

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE