IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EVANGELINA GALVAN NAVARRO,

    Plaintiff,

v.

ESKANOS & ADLER, ET AL,

    Defendant.

No. C-06-02231 WHA (EDL)

**ORDER ON MOTION TO DETERMINE CONFIDENTIAL STATUS OF DOCUMENTS**

## I. BACKGROUND

On December 21, 2006, Plaintiff filed a motion requesting that the Court "Determine Confidential Status of Documents," arguing that certain documents produced in discovery by Defendants Eskanos & Adler, PC, and designated "Confidential" under the terms of the parties' stipulated protective order, did not merit protection and should be de-designated. See Doc. No. 81. The motion was referred to this judge by Judge Alsup, who explained that the issue is whether the documents could be used in other litigation, which would be forbidden if the documents are properly designated confidential under the Amended Stipulated Protective Order. See Amended Stipulated Protective Order (Doc. No. 32) at §1 ("confidential, proprietary, or private information" should receive "special protection from public disclosure and from use for any purpose other than prosecuting this litigation."); see also id. at §§ 7.1 and 11 (confidential materials may be used in connection with this case only, and, after the final termination of this action, confidential material shall be returned to the designating party or destroyed).

The disputed documents are: (1) Exhibit 1 - Documents Bates Stamped DF00005 through DF0000260, inclusive; (2) Exhibit 2 - Document titled "Eskanos & Adler FDCPA

1  Training"; and (3) Exhibit 3 - Document titled "Mail Distribution." See Doc. No. 80. Plaintiff
2  argues that the documents do not qualify as trade secrets, or, even if they do, the documents should
3  not be designated confidential because Defendants have acted in bad faith, over-designated
4  documents, or waived confidentiality. In addition, Plaintiff argues that the documents should be de-
5  designated because there is a public right of access to court documents.

6  Defendants opposed Plaintiff's Motion to Determine Confidential Status of Documents,
7  arguing that the documents were properly designated, confidential, and proprietary. See Doc. No.
8  85. In support of their Opposition, Defendants filed an affidavit explaining the basis for
9  confidentiality of the documents at issue. See Doc. No. 86. Plaintiff filed a Reply on January 11,
10 2007, which included a publicly filed exhibit, "Exhibit 17," which previously had been publicly filed
11 in support of a motion for summary judgment. Defendants did not assert confidentiality over
12 Exhibit 17. On January 19, 2007, Judge Alsup referred this motion to the undersigned, noting that
13 "a decision on this motion does not need to be reached before trial as the only issue is whether
14 plaintiff's counsel can use the documents in other cases." See Doc. No. 98. The matter has been
15 fully briefed, and is appropriate for determination without oral argument. See Civil L.R. 7-6.

16 **II.   STANDARD**

17 Rule 26(c) provides for protection of "a trade secret or other confidential research,
18 development, or commercial information." Fed. R. Civ. P. 26(c). The parties' Amended Stipulated
19 Protective Order incorporates Rule 26(c) to allow the parties to designate as confidential information
20 or tangible things that come within the Rule's protection. Amended Stipulated Protective Order §
21 2.3.
22 The designating party has the burden of establishing that the material whose designation is
23 challenged is entitled to protection. Id. at § 6.3; Fed. R. Civ. P. 26(c).     Where a blanket protective
24 order is entered, as here, a designating party generally has not made a showing of good cause for
25 protection on a document-by-document basis. See Foltz v. State Farm Mut. Auto Ins. Co., 331 F.3d
26 1122, 1133 (9th Cir. 2003) ("[A] party seeking the protection of the court via a blanket protective
27 order typically does not make the 'good cause' showing required by Rule 26(c) with respect to any
28 particular document. Thus, reliance on a blanket protective order in granting discovery and settling a

1  case, without more, will not justify a refusal to modify."). When there is a reasonable request for
2  disclosure, a designating party must do more than simply rely on the protective order in order to
3  justify refusal to modify the designation. See Beckman Indus. v. International Ins. Co., 966 F.2d 470,
4  476 (9th Cir. 1992). To establish good cause, the party seeking protection must show that particular
5  harm will occur if no protective order is entered. See also Phillips v. General Motors Corp., 307 F.3d
6  1206, 1211 (9th Cir. 2002). Broad allegations of harm, unsubstantiated by specific examples or
7  articulated reasoning, do not satisfy the Rule 26(c) test. Id. For each document, a party must show
8  that specific harm or prejudice would result from disclosure of the trade secret or other information
9  deserving protection. See Beckman Indus. Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir.
10  1992).

11  While there is a strong presumption of access to judicial records in connection with
12  dispositive pleadings, including motions for summary judgment and related attachments, the Ninth
13  Circuit "carved out an exception to the presumption of access to judicial records for a sealed
14  discovery document [attached] to a non-dispositive motion." Kamakana v. Honolulu, 447 F.3d 1172,
15  1179 (9th Cir. 2006) (internal quotations and citations omitted). For non-dispositive materials, "[t]he
16  public policies that support the right of access to dispositive motions, and related materials, do not
17  apply with equal force... ." Phillips v. General Motor Corp., 307 F.3d 1206, 1213 (9th Cir. 2002). In
18  other words, access to judicial records not addressing the merits of the case will not assist the
19  "public's understanding of the judicial process and significant public events." Kamakana, 447 F.3d
20  at 1179 (citing Valley Broadcasting Co. v. United States Dist. Ct., 798 F.2d 1289, 1295 (9th Cir.
21  1986)). As the Ninth Circuit stated, there are "good reasons to distinguish between dispositive and
22  non-dispositive motions... .[T]he public has less of a need for access to court records attached only to
23  non-dispositive motions because those documents are often unrelated, or only tangentially related, to
24  the underlying cause of action." See Foltz v.State Farm Mutual Auto Insurance Co., 331 F.3d 1122,
25  1135 (9th Cir. 2003). Whereas discovery may reach private materials, judicial records are "public
26  documents almost by definition." Kamakana, 447 F.3d at 1180. Accordingly, instead of the
27  "compelling reasons" standard applied to seal documents attached to dispositive motions, "a 'good
28  cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive

3

motions." Id.

The Court must examine each disputed record to determine if Defendants have made a "particularized showing" of "good cause" to warrant protection under Rule 26(c). See Reilly v. Medianews Group, Inc., 2007 U.S. Dist. LEXIS 8139 at *12 (N.D. Cal. Jan. 24, 2007). If a court finds that particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary. Phillips v. General Motors Corp., 307 F.3d 1206, 1211 (9th Cir. 2002).

Plaintiff argues that the documents at issue do not meet the legal criteria for "trade secrets." See Motion at 3:10-17; Reply at 3:4-6:12. However, because Rule 26(c) is not restricted to "trade secrets," this argument fails. Plaintiff also argues that the information does not qualify for protection because Defendants have not treated the information as secret. Motion at 3:14-17. If the information has not been kept confidential, no prejudice would result from disclosure its disclosure. See Fed. R. Civ. P. 26(c) (parties may protect "other confidential research, development, or commercial information" as well as trade secrets).

Plaintiff argues that Defendants took no effort to maintain the confidentiality of their documents because at least 210 employees had access to the documents. However, Defendants' employee agreement requires the employee to acknowledge and agree to the following:

> I understand that I may be dealing with confidential information, used in the course of business, and that this information is the property of the Firm. I agree I will not disclose to anyone, directly or indirectly, any of such confidential matters, or use them other than in the course of my employment. All documents that I prepare, and all confidential information I might receive in the course of my employment, are the exclusive property of Eskanos & Adler. I will not remove any such documents without obtaining prior approval.

See DF 55-56. Also, several of the documents submitted bear the legend "proprietary and confidential," and there is no indication that they have not been treated as confidential. See DF 192 through DF 231 (training modules). In addition, "Eskanos & Adler's training programs and procedures are considered confidential and proprietary." See, e.g., Adler Decl. ¶ 4.

Plaintiff also argues that – regardless of whether Defendants maintained the information as confidential – the information is so commonly known that it cannot be protectable, because Defendants' procedures are of the sort that any debt collection business would know. Reply at 6:8-

4

10 (citing Fifth Circuit law); see also Self-Directed Placement Corp. v. Control Data Corporation, 908 F.2d 462, 465-66 (9th Cir. 1990) (a trade secret must not be "generally known"). Plaintiff argues that the materials that Defendants designated confidential "do not contain information which is unique in the trade of debt collection," are simply "derived from federal and state statutory law," or "merely contain generic information regarding the E&A's business operations... ." Reply at 2:1-5. Therefore, their disclosure "would not cause a competitive disadvantage to [Defendants]." Id. at 5:12-24.

Plaintiff relies on Buffets v. Klinkie to support its argument that the manual has no commercial value. A policy and procedure manual which restates "truisms of the industry" – such as the need to comply with certain laws – "may have value to the company, but that does not suggest that there is any value in keeping the manual secret." See Buffets, Inc. v. Klinkie, 73 F.3d 965, 969 (9th Cir. 1996) (affirming district court holding that job manuals were not trade secrets in context of misappropriation of trade secrets action as they were not the subject of reasonable efforts to maintain their security and there was no value in maintaining the information as secret). In Buffets, a nationwide chain of budget buffet restaurants brought suit against a former employee who apparently had obtained access to, and copied, his former employer's employer's employee manual and recipes, to use in a competing restaurant. The district court granted summary judgment for the defendants, holding that Plaintiff had no viable claim under the Washington Consumer Protection Act or the Uniform Trade Secrets Act, which Washington State had enacted. The district court held that the job manuals were not trade secrets because they were not the subject of reasonable efforts to maintain their secrecy, but court made no findings concerning whether the manuals were generally known or readily ascertainable. The Ninth Circuit affirmed the decision, and also addressed the second prong of the trade secret test, which required that the information not be generally known or readily ascertainable. Evaluating the manuals, the Ninth Circuit found that even a cursory review showed that the manuals failed to meet this prong of the trade secret test. Noting that the manuals "contain little more than such food service truisms as 'when tasting foods, never use [] cooking utensils" or "follow the recipe exactly," the Ninth Circuit opined that "while it may have been reasonable to conclude that [a business] obtained value from the manuals, there is little to suggest

that any value was obtained from the manuals being kept secret." <u>Buffets</u> at 969.

Plaintiff argues that the documents at issue are no more valuable than the information in <u>Buffets</u>. For example, among other things, Defendants have marked maps and parking schematics confidential. Also, Defendants have marked public statutes and summaries of those statutes as confidential. And Plaintiff argues that even Defendant's summaries of the laws or compilations of materials have no value because they are "derived" from publicly available statues and apply publicly available software. <u>See</u> Reply at 2:1-5. However, the fact that these statutes are in the public domain is not dispositive; "[t]rade secrets frequently contain elements that by themselves may be in the public domain but together qualify as trade secrets." <u>Buffets, Inc. v. Klinke</u>, 73 F.3d 965, 968 (9th Cir. 1995) (discussing compilation of recipes). Novelty or invention is not a requirement, contrary to Plaintiff's assertion. <u>See</u> <u>Clark v. Bunker</u>,  453 F.2d 1006, 1009 (9th Cir. 1972) (citing Restatement of Torts, § 757, Comment b, pp. 6-7). Where material from the public domain has been "refashioned or recreated in such as way as to become an original product," the material may deserve trade secret protection. <u>Buffets</u>, 73 F.3d at 968. The end product must have some degree of originality, however, and the alleged secrets cannot be "so obvious that very little effort would be required to 'discover' them." <u>Id.</u>

Defendants counter by arguing that the materials at issue are not merely copies of statutes of software manuals. They are the product of "many hours, and many dollars, worth of work in the course of development and refinement over the course of a number of years." The materials were prepared and developed by managers and attorneys, and these materials "represent a considerable investment in both time and money as to their development, refinement and implementation." Adler Decl. ¶¶ 2-3. The company's ability to attract and retain clients is based in part on their commitment to compliance with collection laws and ability to offer competitive rates on their services. Adler Decl. ¶ 13. Defendants argue that the "business of debt collection is a highly competitive business wherein client freely move [from] debt collector to debt collector depending on who can provide the services most efficiently and most effectively." Opp at 5:17-19. And Defendants argue that the company would be competitively disadvantaged if one of their competitors could obtain the policy, training and procedure materials developed and refined by Defendants with no effort or expense. <u>Id.</u>

6

1  In other words, Defendants argue that the publicly available information has been altered and
2  tailored in ways that make the end result a new, original product that may be protected.  Thus, many
3  of the challenged documents may be original documents even though they have been "derived" from
4  federal law.  However, to the extent that the information has not been changed or can be readily
5  compiled, there is little value in maintaining confidentiality of the documents.  Buffets, 73 F.3d at
6  968.  This analysis requires examining the particular documents at issue.

### III.     ANALYSIS OF SPECIFIC DOCUMENTS

#### A.      Eskanos & Adler's Training and Procedure Guide (DF 5 through DF 164)

Defendants describe DF 5 through DF 164 as their Training and Procedure Guide, which is a confidential and proprietary document developed by Defendants over many years.  Adler Decl. ¶ 2.  The Guide is a compilation containing collection policies and procedures, training, general employment policies, and other information including Defendants' employee handbook, form collection letters, "action codes" developed for use with Defendants' debt collection software, and various other training and policy items.  Id.  Defendants concede that the Training and Procedure Guide includes public material such as the text of statutes, see Opp. at 7:22-23, but contend that "it is the integration, organization and use of the entire manual that is entitled to confidential status."  Id. at 6:27-28.

##### 1.    DF 5 and DF 6

DF5 is the cover for Defendants' Training and Procedure Guide, and DF6 is the "Welcome Letter" to Defendants' new employees.  Neither page contains information that is confidential or of commercial value.  Defendants have failed to demonstrate good cause to maintain the confidentiality designation of these pages of the Training and Procedures Guide.

##### 2.    DF 7

This page is an internal organizational chart with names and email addresses, which has been sealed by prior order of the Court.  See Doc. No. 93.  There are some privacy issues at stake that could justify maintenance of the confidential designation of this document.  Defendants have demonstrated good cause to maintain the confidentiality designation of this page of the Training and Procedures Guide.

### 3. DF 8 and DF 9

These pages contain parking diagrams with individual names and access codes. Defendants have demonstrated good cause to maintain the confidentiality designation of these pages.

### 4. DF 10 through DF 60

These pages comprise Defendants' Employee Handbook and additional agreements which set forth general terms and conditions of employment with Defendants. The Employee Handbook itself does not contain a confidentiality provision that would bar disclosure of this document by Defendants' employees. Accordingly, Defendants have failed to demonstrate good cause to maintain the confidentiality designation of this section of the Training and Procedure Guide.

### 5. DF 61 - DF 80

These pages, titled "Eskanos & Adler Workstandards," contain training information in textual and schematic form which "has been developed and refined by Eskanos & Adler over the course of a number of years ... in order to efficiently run its business and provide Eskanos & Adler with a competitive advantage over other debt collectors." Opp. at 6:21-25. Contrary to Plaintiff's assertions, the information is more than a mere "generic description of debt collection litigation" or information that is "common knowledge among any debt collection attorney." Motion at 6:16-18. Instead, the information appears tailored to Defendants' policies and procedures, and contains interpretations of law. It does not merely contain truisms of the industry. Compare Buffets, Inc. v. Klinke, 73 F.3d 965, 969 (9th Cir. 1996) (holding that no value was obtained by keeping secret employee manuals which contained "little more than [] food service truisms"). Further, if a competitor obtained this information, it would competitively disadvantage Defendants because competitors would have the benefit of Defendants' "how-to" guide without incurring the administrative and legal expense of developing its own manual. See Opp. at 6:2-3. As noted above, Defendants have taken efforts to maintain the confidentiality of their work product. Accordingly, Defendants have demonstrated good cause to maintain the confidentiality designation of this section of the Training and Procedures Guide.

### 6. DF 81 - DF 82

These pages have been sealed by prior order of the Court. See Doc. No. 93. A review of the

pages reveals that they contains "best practices" procedures developed in reliance on Defendants' interpretation of law. As discussed above, Defendants have demonstrated good cause to maintain confidentiality over their work product and these pages of the Training and Procedures Guide are properly designated confidential.

### 7. DF 83 - DF 113

Plaintiff describes this information (and DF 81-DF 82) as "documents related to the CollectOne software package," asserting that "[a]ny debt collector who purchases the CollectOne software package would have access to the very information contained in these documents." Motion at 6:21-25. However, this is not an accurate description of the documents. In fact, the documents contain procedures and information for use in connection with the software. See Adler Decl. ¶ 6 ("The material deals with specific letters of Eskanos & Adler not merely the workings of CollectOne. The material is not taken from any CollectOne Manual that is commercially available.") It is not, as Plaintiff apparently believes, merely a commercially available guide explaining use of the software. Id. As Defendants note, some of the information, such as the "action codes" which are an extensive list of scenarios employees may address, "were specifically developed by Eskanos & Adler in order to efficiently run its business and provide Eskanos & Adler with a competitive advantage over other debt collectors." Opp. at 6:23-25. These documents are Defendants' work product and may have commercial value to others. Accordingly, Defendants have demonstrated good cause to maintain the confidentiality designation of this section of the Training and Procedures Guide.

### 8. DF 114 - DF 116

These documents are personnel and accounting forms, such as vacation requests and client billing forms holding no commercial value or providing no competitive advantage. Defendants have failed to demonstrate good cause to maintain the confidentiality designation of this section of the Training and Procedures Guide.

### 9. DF 117-118

These documents appear to be mail tracking forms for communications with debtors. They do not appear to have commercial value or provide any competitive advantage. Defendants have

1  failed to demonstrate good cause to maintain the confidentiality designation of this section of the
2  Training and Procedures Guide.

### 10.     DF 119 - DF 138

These pages contain the text of the federal Fair Debt Collection Practices Act and the California Rosenthal Fair Debt Collection Practices Act. Defendants agree that the language of these statutes is not confidential or proprietary. Opp. at 6:26-28. Defendants' argument that the organization of the manual is itself commercially valuable or competitively sensitive is unpersuasive. Further, the parties' protective order and the Local Rules instruct that only confidential <u>portions</u> of a document may be designated confidential. Accordingly, Defendants have failed to demonstrate good cause to maintain the confidentiality designation of this section of the Training and Procedures Guide.

### 11.     DF 139

This summary of state laws likely has value to Defendants as it represents the work of an attorney or legal assistant summarizing debt collection laws. Although Plaintiff asserts that the information is publicly available to all debt collection agencies, the compilation is not readily available. However, the end product is not original; it is merely a summary of available law. The compilation is not the sort of information that derives "independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from [their] disclosure or use." <u>See</u> <u>American Paper & Packaging Products, Inc. v. Kirgan</u>, 183 Cal. App. 3d 1318, 1324 (1986) (applying California's Uniform Trade Secret Act). Accordingly, as the Ninth Circuit noted in <u>Buffets</u>, "while it may have been reasonable to conclude that [a business] obtained value from the manuals, there is little to suggest that any value was obtained from the manuals being kept secret." <u>Buffets</u>, 73 F.3d at 969. Defendants have failed to demonstrate good cause to maintain the confidentiality designation of this page of the Training and Procedures Guide.

### 12.     DF 140 - DF 162

This section of the Training and Procedure Guide contains Defendants' form collection letters. Plaintiff argues that the letters are not entitled to protection because thousands of the letters are in circulation because Defendants mail the letters every day. Motion at 7:25-27. Defendants

argue that although the individual letters sent to a debtor may not be confidential, "the organization and presentation of the entire repertoire of letters is entitled to protection. There is no other place that a competitor could go to obtain all the collection letters used by Eskanos & Adler and thereby benefit from the review, revisions and refinement of the series of collection letters." Opp. at 7:2-6. As Plaintiff notes, this argument is "plausible on its face." Reply at 8:2. The manual itself is the sort of proprietary work product Defendants require their employee to maintain confidential. Although the letters have been disclosed in part to debtors, the complete package of standard letters are not in a real sense publicly available. The compilation of form letters itself would be useful to a competitor and, if freely available, would undercut Defendants' competitive advantage. See Adler Decl. ¶ 2; Opp. at 7:25-26. Defendants have demonstrated good cause to maintain the confidentiality designation of this section of the Training and Procedures Guide.

**13.    DF 163**

This page supplements the training procedures found earlier in the Guide. The information is proprietary, and is an original work. Through its confidentiality agreement with its employees, Defendants made efforts to keep this information confidential. Defendants have demonstrated good cause to maintain the confidentiality designation of this page of the Training and Procedures Guide.

**14.    DF 164**

This page is the back cover of the training manual and contains no substantive content. Defendants have failed to demonstrate good cause to maintain the confidentiality designation of this section of the Training and Procedures Guide.

**B.    FDCPA Training Module (DF 165 through DF 191)**

DF 165 through 191 is a "training module" prepared pursuant to attorney and management supervision for purposes of training and compliance with the Fair Debt Collection Practice Act. Adler Decl. ¶ 3. The document and presentation in this section are frequently updated at a considerable effort in both time and money. Id. Defendants consider the module confidential and proprietary. Id. However, this section contains no independent work product, other than its arrangement into a power point presentation. It contains only the text of the FDCPA and related state law, which is publicly available. Defendants have not articulated any particular harm that

would occur if the information were to become public. In fact, Defendants acknowledge that "the FDCPA module simply states the language of the statute." Opp. at 7:22-23. Accordingly, Defendants have failed to demonstrate good cause to maintain the confidentiality designation of this section of the Training and Procedures Guide.

### C. Telephone Message Guidelines; Third Party Communications; Sending Letters in Collect One; and Identity Theft Training Modules (DF 192 through DF 231)

These "training modules" bear the legend "proprietary and confidential" and there is no indication that they have not been treated as confidential. These sections do more than merely state the law; they "provide[s] specific information as to Eskanos & Adler's policies and procedures, which in fact are often times stricter than the law." See Adler Decl. ¶¶ 4-7 The documents indicate an interpretation of the law, and provide internal procedures to implement the law. The information is not taken from any commercially available source. Id. These documents represent Defendants' work product, which required a "considerable investment" to develop, refine, and implement, and which may provide a competitive advantage to competitors, if disclosed. See Adler Decl. ¶¶ 3-7. Defendants have demonstrated good cause to maintain the confidentiality designation of this section of the Training and Procedures Guide.

### D. Training and Testing File of Keith Williams (DF 232 through DF 254)

The documents bearing the Bates numbers DF 232 through DF 254 comprise the training file and test results pertaining to a former employee of Defendants who is not a party in the case. See Opp. at 8:2-3. Privacy concerns are implicated by the disclosure of the individual's test results and employment information. Defendants also argue that it developed the "training sequence and processes and actual training materials" and the actual tests, and these are considered confidential and proprietary. Adler Decl. ¶ 8. The tests are original material, are part of Defendants' training approach, and have consistently been maintained as confidential. Especially in light of the privacy issues, there is good cause to maintain the confidentiality designation of this section of the Training and Procedures Guide.

### E. Collector Monitoring Procedure (DF 255)

The document bearing the Bates number DF 255 appears to be no more than information

12

about Defendants' employee supervision practices. See Motion at 10:12-15; DF 255. According to Defendants, the document was "specifically drafted and prepared in response to a request from a client" to assure the client that Defendants' procedures met the client's and legal standards. Opp. at 8:14-15; Adler Decl. ¶ 9. The information itself, however, is not commercially valuable, nor is the information secret. Defendants have failed to show specific prejudice or harm that would result from disclosure of the document. See Beckman Indus. Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) (good cause requires party seeking protection to show specific harm or prejudice.) Accordingly, Defendants have failed to demonstrate good cause to maintain the confidentiality designation of this section of the Training and Procedures Guide.

### F. Training Flow Schematic (DF 256 through 260)

This section contains Defendants' sequence of training, which apparently is no longer used. See Motion at 10:18-19; Opp. at 8:27 (the document describes the Training Flow that was previously implemented). Defendants' explanation of the document is that it "was created by Eskanos & Adler to detail the procedure used in training new hires." See Opp. at 8:26-28; Adler Decl. ¶ 10. It is not very detailed. Defendants have failed to show that any harm would result from disclosure of the superseded training sequence. Accordingly, Defendants have failed to demonstrate good cause to maintain the confidentiality designation of this section of the Training and Procedures Guide.

### G. "Eskanos & Adler FDCPA Training" (Exhibit 2)

The document labeled "Eskanos & Adler FDCPA Training" (Exhibit 2) details the FDCPA training regimen Defendants used for their new hires. Opp. at 9:2-5. Defendants state that their collector training has been developed and refined over the years by a full-time Training Manager, and it "represents a sizable investment in both time and money." Adler Decl. ¶ 11. The document marked as Exhibit 2, however, is merely a summary of the training regimen. See Motion, Ex. 2. The information provided in the document – that Defendants' employees are frequently tested and highly trained – is neither commercially valuable nor secret. Defendants have failed to demonstrate good cause to maintain the confidentiality designation of Exhibit 2.

### H. "Mail Distribution" (Exhibit 3)

1  The document titled "Mail Distribution," marked as Exhibit 3 to Plaintiff's Motion, details
2 the process and policy in distribution of Defendants' incoming mail. Adler Decl. ¶ 12. There is
3 nothing commercially valuable about the content. There is nothing to indicate that Defendants
4 would obtain any value from maintaining the information as secret. Accordingly, Defendants have
5 failed to demonstrate good cause to maintain the confidentiality designation of Exhibit 3.

6 **IV.    DE-DESIGNATION AS A SANCTION**

7  The Court concludes that there is good cause to continue to protect certain of the documents
8 currently designated confidential. Plaintiff, however, raises reasons why the documents should
9 nonetheless be de-designated. The Court must consider whether these issues would preclude
10 protection of the disputed documents. See Phillips v. General Motors Corp., 307 F.3d 1206, 1211
11 (9th Cir. 2002) (if a court finds particularized harm will result from disclosure of information to the
12 public, then it balances the public and private interests to decide whether a protective order is
13 necessary).

14  **A.    Bad Faith**

15  Plaintiff argues that this motion is necessary as a result of Defendants' "repeated attempts to
16 impede the litigation of this case" and their "obstructive and uncompromising misuse of the
17 discovery process in this case." Motion at 1:25-27. Moreover, "[o]ver[-]designation of documents
18 creates an undue burden on the Court and the non-designating party in this litigation." Id. at 4:7-8.
19 Plaintiff suggests that the Court and the parties have been "hobbled by indiscriminate designations"
20 in this matter. Id. at 4:7. The Court, however, is not persuaded by conclusory arguments or
21 hyperbole. Plaintiff has proffered no evidence that Defendants have acted in bad faith, nor has
22 Plaintiff articulated the burden (undue or otherwise) it bears on account of confidentiality
23 designations.

24  **B.    Over-Designation**

25  Although the documents at issue have been treated as only three documents, the parties
26 dispute whether confidentiality designations should be assigned to documents as a whole, or
27 assigned section by section. Plaintiff argues that the treatment of the document as a single document
28 has resulted in the assignment of a "Confidential" designation over sections containing the text of a

14

1  statute, a cover page, and blank personnel forms, none of which constitute confidential information.
2  Defendants have treated their Training and Procedure Guide as a single unit, arguing that the
3  "integrations, organization and use of the entire manual is entitled to confidential status."  See Opp.
4  at 6:28.  However, Defendants' argument is unsupportable in light of the protective order, the Local
5  Rules, and the Court's directive regarding over-designation and "narrowly tailoring" documents the
6  parties seek to seal.

7  When designating confidential materials, the designating party "must take care to designate
8  only those parts ... that qualify – so that other portions of the material, documents, items, or
9  communications for which protection is not warranted are not swept unjustifiably within the ambit
10  of this Order."  Amended Stipulated Protective Order at § 5.1 (emphasis added); see also id. at § 5.2
11  (describing procedure for labeling materials and portions of materials with confidentiality
12  designations).  Further, "[m]ass, indiscriminate, or routinized designations are prohibited."  Id.  In
13  approving the stipulated protective order, the Court emphasized that the parties must narrowly tailor
14  designations to include only material for which there is good cause.  Order Approving Stipulated
15  Amended Protective Order Subject to Certain Conditions (Doc. No. 33) at 1:24-26.  Plaintiff asks
16  the Court to sanction Defendants for over-designating confidential documents and for failing to
17  distinguished between confidential and public information.  However, Defendants' designations,
18  although over-inclusive, do not warrant de-designation of all confidential documents, as Plaintiff
19  requests.

20  **C.  Public Right of Access: Discovery Documents Versus Court Documents**

21  Plaintiff argues that the documents should be de-designated because there is a common-law
22  right of access to judicial records.  Motion at 4:8-9.  This motion, however, discovery documents not
23  previously filed in connection with any motion except this one.  As "none of the [documents] in
24  dispute have been relevant to the Court's findings in the underlying case, to this point," the policy
25  underlying the presumption of access "is of little to no weight in the face of [the designating party's]
26  concerns."  See Reilly v. Medianew Group, Inc., 2007 U.S. Dist. LEXIS 8139 (N.D. Cal. Jan. 24,
27  2007) (Illston, J.), at *14 n.2 (finding "good cause" existed to maintain the bulk of the disputed
28  records under seal).  Accordingly, the public right of access has no bearing on the Court's

determination here, beyond the requirement that Defendants articulate good cause to seal.

//

### D.     Waiver

Plaintiff argues that because Defendants did not seek to seal Exhibit 17, which is similar to the documents designated Confidential, Defendants "ha[ve] not treated this information as a trade secret." Reply at 5:14-17 and Schwinn Supp. Decl. ¶ 3 and Ex. 17. However, Exhibit 17 was filed in support of a dispositive motion, see Motion for Partial Summary Judgment (Doc. No. 89), Ex. I. Part 3, so a compelling reasons rather than only "good cause" would be required to maintain its confidentiality. Therefore, disclosure of Exhibit 17 does not operate as a waiver of Defendants' confidentiality designations for the remainder of the documents.

## V.     CONCLUSION

Defendants shall revise their confidentiality designations in accordance with this order within 14 days of the entry of this Order.

**IT IS SO ORDERED.**

Dated: March 22, 2007

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

16