IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINA GALVAN NAVARRO,<br><br>  Plaintiff,<br><br>  v.<br><br>ESKANOS & ADLER, A PROFESSIONAL CORPORATION, a California Corporation, DONALD ROGERS STEBBINS, individually and in his official capacity, and KURTISS JACOBS, individually and in his official capacity,<br><br>  Defendants.<br>_____/ | No. C 02-03430 WHA<br><br><br>**SPECIAL MASTER'S RULING AND RECOMMENDED ORDER RE ATTORNEY'S FEES AND COSTS** |

**INTRODUCTION**

This is an action under the federal Fair Debt Collection Practices Act, 15 U.S.C.1692 *et seq*. ("FDCPA") and California Fair Debt Collection Act, Cal. Civ. Code § 1788 *et seq*. ("California FDCPA"). Plaintiff initially alleged that defendants violated the fair debt collection statutes by sending her a letter seeking payment of a past due credit card debt after they had received a response to a previous collection letter instructing her to "cease and desist" such communications. Plaintiff later amended her complaint adding second violation for alleged misrepresentations in the letters regarding the involvement of attorneys in the debt collection process. Plaintiff did not claim that she suffered any actual damages from the violations. A Plaintiff that has not alleged actual damages may recover a maximum of $1000 in statutory damages for a violation of the FDCPA. See 15 U.S.C. § 1692k. The

limit is the same under the California FDCPA. See Cal. Civ. Code § 1788.39(b). Accordingly, plaintiff could recover a maximum of $2000 of damages if she prevailed on both claims against defendants. She would also be entitled to the reasonable attorneys' fees and costs of pursuing the claims. 15 U.S.C. § 1692k(a)(3). It is that provision of the FDCPA that is the focus of the matter at hand.

Defendants did not dispute plaintiff's initial allegations. They acknowledged that they had sent the second collection letter after they received the cease and desist notice. They insisted that it was an inadvertent error and that they had internal compliance procedures to prevent such occurrences but informed plaintiff's attorney that they were willing to pay $500 plus reasonable attorney's fees and costs verified by her attorney's billing records. Plaintiff's attorney responded with a demand for a flat $3500, inclusive of fees and costs, without verification. Defendants declined, retained counsel and prepared to defend the case.

Plaintiff made further settlement proposals as the case progressed, with demands for damages in amounts ranging from $2000 to $1000, and the parties also engaged in mediation, but the stumbling block to settlement throughout the one-year history of the case was not plaintiff's demand for damages but her demand for attorneys fees and costs. The parties ultimately resolved the first issue without resolving the second. On March 12, 2007, less than one month prior to the date of trial, they stipulated to settle the case for $1500 in damages, plus attorneys fees and costs in an amount to be determined by the court on plaintiff's motion. On May 30, the court vacated the noticed hearing date, ordered plaintiff to resubmit the motion in accordance with the court's prescribed procedures for fee motions and informed the parties that if they were unable to resolve the matter before the due date, the court intended to refer it to a Special Master for ruling. The parties did not resolve it and, after giving them an opportunity to select a Special Master, the court appointed the undersigned as Special Master pursuant to Fed. R. Civ. P. 53(c) and 54(d)(2)(D). Order Appointing Special Master, July 24, 2007.

**PROCEEDINGS BEFORE THE SPECIAL MASTER**

On August 1, 2007, the Special Master contacted counsel to instruct them to meet and confer on the selection of materials that would inform the Special Master's ruling on the motion and discuss procedural matters and scheduling. After reviewing their submission, the Special Master held a telephonic hearing on August 31, 2007 to address questions and request other materials, including

transcripts of plaintiff's and other witness' depositions in the case. The Special Master also noted a series of errors in the calculation of costs in plaintiff's fee application and asked plaintiff's counsel to submit an amended declaration with the errors corrected, which he did. The corrections reduced plaintiff's cost request from $9832.09 to $6551.09.

The Special Master conferred with counsel again on September 19, 2007, asked them to address various areas of concern and asked plaintiff's counsel to provide a copy of his engagement and fee agreement with Ms. Navarro, which he agreed to do. The Special Master also advised counsel that in the event they desired to submit additional materials or hold a further hearing in the matter, they would have to inform him no later than October 6, 2007 or the motion would be deemed submitted. Neither party responded.

Plaintiff requests fees and costs of $127,943.64, of which $18,102.55 are for the preparation of the present motion. The Special Master's analysis and ruling on plaintiff's request is set forth below.

## PLAINTIFF'S CLAIMS AGAINST DEFENDANTS

### *Cease and Desist Violations*

Some time prior to June 2005, plaintiff accumulated a past due balance on a Discover credit card. Discover was assigned the debt to defendant Eskanos & Adler, a debt collection law firm. On June 8, 2005, Eskanos & Adler mailed a letter to plaintiff seeking to collect the debt. The letter was printed on letterhead that identified Eskanos & Adler as a law firm and was signed by defendant Donald Stebbins as an "Attorney for the Firm". On June 17, 2005, Eskanos & Adler received a letter asking defendants stop telephoning Navarro and contact her only by mail. The letter also stated that the Navarro family was having financial problems and were considering bankruptcy. In accordance with standard office procedures, an employee of the firm marked the account "DNC", used interchangeably for "Do Not Call" or "Do Not Contact" and removed plaintiff's telephone numbers from the account.

On June 27, 2005, Defendants received a certified mail letter from plaintiff asking them to "CEASE and DESIST" all efforts to collect the debt and asserted that she was judgment proof. The employee who received the letter made an entry in the computer system noting receipt of a cease and desist letter on Navarro's account. The employee routed the letter to a manager with responsibility for

such matters but it was misdirected to one of the collectors assigned to the file. The collector entered it in the file but failed to identify it as a cease-and-desist letter or designate it with the symbol that ceases letter activity on the account. That started a chain of events that resulted in a collector's sending Navarro another letter on August 1, 2007 requesting that she contact the firm to discuss resolving the debt. Like the first letter, the letter was on law firm letterhead, but defendant Kurtiss Jacobs, who was a staff attorney but was not identified as an attorney in the letter, signed it. On August 8, 2005, plaintiff sent a third letter to Eskanos & Adler asking them to stop communicating with her about the debt. There were no further activities on the account. On October 5, 2005, Eskanos & Adler received notice that Navarro had filed for bankruptcy and closed the file

Plaintiff claimed that by sending her the collection letters after she notified them to cease and desist such communications, defendants violated 15 U.S.C. 1692c(c) of the FDCPA, *viz,*

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to that debt . . ..

Defendants acknowledged that they received the letter from plaintiff asking them to stop contacting her on June 27 and that they sent plaintiff the second collection letter on August 21, which is a *prima facie* violation of 15 U.S.C. 1692c(c). Plaintiff filed a motion for summary judgment on the violation, which the court granted, based on defendants' admissions.

However, defendants asserted that they were not liable for a violation of 15 U.S.C. 1692c(c) for sending the second collection letter because it was the product of an innocent mistake. Defendants rely 15 U.S.C. 1692k(c) which provides a defense to an FCCPA violation if the defendant can establish "by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. 1692k(c). The same defense is available to a violation of the California FDCPA.

Eskanos & Adler claimed that it had a general, overriding policy of not contacting debtors after the firm had received a "cease and desist" letter and had adequate procedures in place to prevent violations of the FDCPA. The evidence, including the deposition testimony of nine present and former

4

Eskanos & Adler employees taken by plaintiff generally supported the firm's position but also disclosed weaknesses in the system of a sort that may have been responsible for the incident in this case.  Plaintiff moved for summary judgment denying the defense and defendants filed a cross-motion for summary judgment granting it.  Not surprisingly given conflicting evidence on a fact-laden issue, the court denied both parties' motions.

### *Misrepresentations of Attorney Involvement*

Plaintiff alleged that defendants letters violated 15 U. S.C. 1692e, 1692e(3) and 1692e(10) by misrepresenting the involvement of attorneys in the collection of the debt.  Section 1692e forbids the use of false, deceptive or misleading representations in connection with collecting debts. 15 U.S.C. 1692e(3) forbids "[t] he false representation or implication that any individual is an attorney or that any communication is from an attorney," and 15 U.S.C. 1692e(10) forbids "[t] he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer."  There are similar provisions in the California FDCPA.

Plaintiff argued that defendant Stebbins' signature as an attorney and use of Eskanos & Adler letterhead on the first letter falsely represented or implied that Stebbins had conducted a professional investigation of the debt and was acting in the role of an attorney when the evidence disclosed that he had not even read the letter before signing it.  Both parties moved for summary judgment on the claim.  The court found that there were conflicting issues of fact and interpretation that could not be decided on summary judgment and denied the motion.

With respect to the second letter, plaintiff' alleged that Eskanos & Adler and Jacobs violated the same provisions of the FDCPA as the first letter by misrepresenting or falsely implying that Jacobs, an attorney, had reviewed the file, falsely representing the role and involvement of legal counsel, and falsely representing the source and nature of the letter.  However, the facts required plaintiff to employ a different argument.  Unlike the first letter that identified the signatory as an attorney, neither Jacobs, who signed the second letter, nor any of the three other individuals who appeared in the signature block, were identified as attorneys, nor was there anything in the contents of the letter to suggest that it involved a legal matter.  With the exception of the Eskanos & Adler letterhead, the second letter had nothing in common with the first.  The court denied plaintiff's motion

for summary judgment on this claim as well.

**PROCEDURAL HISTORY**

The complaint was filed on March 26, 2006 and service was completed by mid-April. On April 18, before retaining counsel to represent his firm in the action, Barry Adler, one of the named partners in the firm sent a letter to plaintiff's attorney, Fred Schwinn, in which he acknowledged the incident, attributed it to an innocent mistake and offered to settle the case for $500, plus reasonable attorney's fees and costs verified by Mr. Schwinn's time and billing reports. Mr. Schwinn responded the same day. He rejected Mr. Adler's offer and countered with a settlement demand of $3500, inclusive of fees and costs, without verification, to be paid by certified funds and deposited in his client trust account upon acceptance. Mr. Adler did not respond to Mr. Schwinn's proposal and engaged Mark Ellis and Andrew Steinheimer, of Murphy, Pearson, Bradley & Feeney, to represent his firm and the individual defendants in the action.

There was relatively little activity in the case between mid-April and mid-September, 2006. Apart from administrative tasks, correspondence and the like, the parties exchanged Initial Disclosures, participated in a telephonic ADR conference, prepared a Joint CMC Statement, attended a CMC and spent the better part of two months trying to schedule a mediation session. Plaintiff propounded a set of written discovery. The only apparent settlement activity was a Rule 68 offer by Defendants on undisclosed terms that expired without a response. The Special Master's review of Mr. Schwinn's billing records disclosed that as of mid-September, Mr. Schwinn had accumulated fees of approximately $10,000 on the matters described above.

The parties participated in a single-session mediation on September 19, 2006 that failed to produce a settlement. The following day, Mr. Schwinn sent a letter to Mr. Steinheimer offering to settle the case for $1000 plus attorney fees and costs to be awarded by the court. Defendants rejected the offer.

Over the next three months, Mr. Schwinn took the depositions of nine present and former Eskanos & Adler employees, custodian of records and third party depositions for production of documents, filed motions to compel discovery, filed supplemental disclosures and filed a motion for leave to file and filed an amended complaint adding the alleged misrepresentation violations. Mr.

Schwinn billed $8,395.00 to prepare and argue the motion to file the amended complaint. (Defendants produced a substantially identical complaint and motion used by Mr. Schwinn in another lawsuit). Mr. Schwinn billed a total of approximately $45,000 for these services.

On December 1, 2006, defendants took plaintiff's deposition. The transcript of the deposition discloses that Ms. Navarro knows nothing about the parties, claims, fee arrangements, terms of recovery or much of anything else about this case.

On December 8, 2006, a week after defendants took Ms. Navarro's deposition, Mr. Schwinn sent Mr. Steinheimer a letter offering to settle the case for a judgment of $2000 plus court-awarded attorney fees and costs, which defendants rejected. On January 11, 2007, the parties filed the summary judgment motions discussed above. The only issue on which summary judgment was granted was the cease and desist violation to which defendants had admitted at the time the action was filed. Plaintiff billed approximately $33,400 for his work on the summary judgment motions. (Defendants produced virtually identical pleadings filed by Mr. Schwinn on the same issues in other cases).

**1. Introduction**

On March 12, 2007, the parties entered into a stipulated settlement pursuant to which (1) defendants would pay plaintiff damages of $1500, plus her attorneys fees and costs to be determined by later agreement of the parties or, failing such agreement, by order of court and (2) defendants stipulated that plaintiff was the prevailing party in the action. The stipulation was entered as a court order. Stipulated Settlement and Order, March 13, 2007.

Plaintiff filed a motion for attorneys' fees and costs on April 27, 2007 noticed for hearing on June 14. The motion was accompanied by a declaration of plaintiff's counsel setting forth the requested fees and costs and declarations of attorneys supporting the application. The court vacated the noticed hearing date and ordered plaintiff to resubmit the motion in the format specified in the order. Order re Motion for Attorney's Fees and Costs, May 30, 2007. Plaintiff resubmitted her attorney's declaration of fees and costs in the prescribed form on the same date. Plaintiff's attorney later submitted a revised and updated version. The declaration was subsequently amended to correct arithmetic errors in the cost calculations that were discovered by the Special Master in the proceedings on the motion. Amended Revised Declaration of Fred W. Schwinn filed September 28, 2007. Plaintiff also submitted a

supplemental declaration that included Mr. Schwinn's recent fees and costs for the fee proceedings that were not reflected in his amended declaration. Supplemental Declaration of Fred W. Schwinn, September 28, 2007. Together, those declarations contain all of the fees and costs requested that plaintiff is seeking and accordingly are treated as the "Fee Application" for purposes of this Ruling.

Plaintiff seeks to recover a total of $127,943.64 in fees and costs pursuant to 15 U.S.C. section 1692k(a)(3), of which $121,255.00 are fees and $6,688.64 costs. Plaintiff asserts that the fees represent a total 487.1 hours of attorney time on the case, of which 337.4 hours are for lead attorney Fred W. Schwinn and 194.7 hours for law clerk Jovanna Longo. The application indicates that Mr. Schwinn billed plaintiff for his services at a rate of $300/hr. and $125/hour for services performed by Ms. Longo.

Defendants raise a number of objections to the fee application. Defendants contend: (1) that the hourly rates charged by plaintiff's attorneys are unreasonable given (a) the prevailing rates for attorneys of like skill and experience performing comparable services in the area and (b) the relative lack of complexity of the issues; (2) the request claims fees for projects and activities that were unnecessary and/or unsuccessful; (3) the request includes fees for trial preparation activities after the parties reached a settlement; (4) the request includes fees for prosecuting the action against defendants who plaintiff subsequently dropped from the case and should be reduced proportionately; (5) the fees charged for individual projects and activities were excessive given the use of papers filed in other cases and the ordinary and usual amount of time required for the tasks; (6) the request includes fees for the preparation of the fee request and Special Master proceedings that are unrecoverable and excessive; and (7) the request includes costs for items and services that are unrecoverable as a matter of law. Defendants' opposition contains the information and is presented in accordance with the Court's Order re Motion for Attorney's Fees and Costs dated May 30, 2007.

Defendants also dispute plaintiff's entitlement to $127,000 in fees for an action that took less than one year to resolve, involved relatively straightforward claims and benign conduct, simple and mostly undisputed facts, no damages, no signs of obstruction or discovery abuse and produced a $1500 settlement prior to trial. Defendants assert that this matter served no public purpose, did not advance the goals of the FDCPA, imposed unnecessary demands on the court, was prosecuted solely for the

benefit of plaintiff's attorney and provided no benefits to his client. Based on this perspective, defendants contend that plaintiff should be limited to the fees and costs incurred as of the date she rejected defendants initial settlement offer, which based on her attorneys billings records total $880.00.

The Special Master will address the defendants' arguments and objections below, but first discusses the legal standards governing the determinations and rulings in this matter.

### 2. Legal Standards

The Fair Debt Collection Practices Act states that "any debt collector who fails to comply with [the statute] with respect to any person is liable to such person." 15 U.S.C. § 1692k(a). "[I]n the case of any successful action to enforce the foregoing liability, the costs of the action, together with the reasonable attorney's fee as determined by the court" will be included in the amount of the debt collector's liability. 15 U.S.C. § 1692k(a)(3). An award of attorneys' fees pursuant to section 1692k(a)(3) is mandatory. See Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir.1991) ("[A] ttorney's fees should not be construed as a special or discretionary remedy; rather, the [FDCPA] mandates an award of attorney's fees ..."); Cancio v. Financial Credit Network, No. C 04-03755 TEH, 2005 WL 1629809, at *1 (N.D. Cal. July 6, 2005) (Henderson, J.) ("The FDCPA entitles a successful plaintiff to reasonable attorneys' fees as determined by the court.").

Factual determinations in fee awards are reviewed for clear error. Fischer v. SJB-P.D., Inc., 214 F. 3d 1115, 1118 (9th Cir. 2000). The legal premises that the court employs to determine a fee award are reviewed *de novo.* Siegel v. Fed. Home Loan Mortgage Corp.143 F .3d 525, 528 (9th Cir. 1998). If the reviewing court concludes that the district court applied the proper legal principles and did not clearly error in any factual determinations, the award is reviewed for abuse of discretion. Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1148 (9th Cir. 2001), citing Siegel, 143 F3d at 528.

### 3. Lodestar Formula

In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (Civil Rights statute), the Supreme Court outlined the proper method for determining reasonable attorneys' fees using the lodestar method. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. at 433. There is a strong presumption that the lodestar formula represents a reasonable fee. Pennsylvania

v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). The court may decrease the amount of hours in the calculation where the prevailing party's counsel inadequately documents their hours.  Hensley, 461 U.S. at 433.  In addition, the court will deduct any hours not reasonably expended, such as those that are "excessive, redundant, or otherwise unnecessary." Id. at 434. FN3. ["Hours that are not properly billed to one's client also are not properly billed to one's adversary", quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C.Cir.1980)].

This Circuit has adopted the "lodestar" approach for determining reasonable attorney's fees. See Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir.1987) (citing Hensley 461 U.S. at 433). The Court must calculate the lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. See Jordan, 815 F.2d at 1258. The formula is uniformly applied by District Courts in FDCPA cases.  See Ferland, 244 F.3d at 1149, n.4.

While the lodestar is strongly presumed to be reasonable, it may be adjusted on the basis of other considerations that have not already been subsumed in the initial lodestar calculation. Jordan, 815 F.2d at 1258.  The Court is to provide a concise but clear explanation of how it arrived at its calculations. Hensley, 461 U.S. at 437.  Although across-the-board reductions are permissible, they do not dispense with the need for a concise and *clear* explanation.  See Ferland, 244 F. 3d at 1149; see also Gates v. Deukmejian, 987 F. 3d 1392, 1399 (9th Cir. 1992) (approving "meat axe" approach under appropriate circumstances).  The sufficiency of the district court's explanation is reviewed for abuse of discretion.  Gates 987 F. 3d at 1398.

### 4,  Billing Rate Determination

The first step in the lodestar calculation is the determination of the appropriate billing rate. The court has discretion in determining a reasonable hourly rate that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," but it is the fee applicant's burden to produce satisfactory evidence to assist the court in its assessment. Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d

10

403, 407 (9th Cir.1990).

As defendants note in their opposition papers, one of the relevant and oft-cited considerations in determining hourly rates in FDCPA and other fee-shifting cases is the complexity of the substantive and procedural issues presented in the case. See e.g. Langley v. Check Game Solutions, Slip Copy2007 WL 2901345 (S.D. Cal. Sept. 13, 2007); Abad v. Williams Cohen & Gray, Slip. Copy, 2007 WL 1839914 (N.D. Cal. June 26, 2007). This action involved essentially two claims. The facts showing a prima facie violation of the FDCPA cease and desist provisions were undisputed. All the facts relevant to the determination of defendants' bona fide error defense and plaintiff's misrepresentation claims were either admitted or readily available, were understandable to a jury and could have been determined in a efficiently in a one-day trial.

### 5. **Reasonable Billing Rates for Fred Schwinn and Jovanna Longo**

Plaintiff requests $300 per hour for lead counsel Fred W. Schwinn and $125 per hour for Jovanna Longo, Mr. Schwinn's law clerk. Defendants contend that Mr. Schwinn should receive $200/hr. and Ms. Longo, $50/hr. Plaintiff's application is accompanied by the declarations of plaintiff's attorney, Fred Schwinn, and two attorneys experienced in FDCPA cases, Ronald Wilcox and Scott Maurer. Mr. Schwinn's deposition includes a redacted two-page portion of a decision by Magistrate Judge Brazil that used a $300 per hour billing rate for Mr. Schwinn and $125 per hour for Ms. Longo in calculating a sanctions award of unspecified nature in an unidentified action. Attorneys Wilcox and Maurer declare that they and other attorneys with comparable skill and experience to Mr. Schwinn and Ms. Longo have received comparable hourly rates in FDCPA fee awards.

Defendants rely on a declaration of their attorney, Andrew Steinheimer, and a declaration of Mark E. Ellis, a member of Mr. Steinheimer's law firm, from the record of another FDCPA action. The declarations: authenticate and discuss a number of FDCPA fee decisions awarding hourly rates in the $200-250 range to Mr. Schwinn, Mr. Wilcox and Mr. Maurer; show that Mssrs. Schwinn, Maurer and Wilcox frequently file declarations supporting each other's fee applications; and introduce pleadings, motions and other papers filed by Mr, Schwinn in other FDCPA actions that are substantially the same as documents filed in this action. Mr. Steinheimer's declaration provides the information required by the court's May 30 order, including the range of his hourly rates in FDCPA actions ($175-$200) and his

hourly rate in this action (currently $200).

The Special Master has reviewed and considered the parties' arguments, supporting declarations, opinions presented and applicable case authority and hourly rates approved by courts in FDCPA fee cases in this district to Mr. Schwinn and attorneys with comparable skill and experience and presenting comparable issues and based thereon concludes that Mr. Schwinn billing rate should be reduced to $250 per hour. A review of Mr. Schwinn's billing records disclose that Ms. Longo's responsibilities include scheduling and administrative tasks, legal research and videotaping witness deposition testimony. A reasonable rate for Ms. Longo for services of this nature is $75/hour. These rates are consistent with the trend in the Northern District. Abad, *supra* Slip Op. 2007 WL 1839914. This addresses defendants' first objection.

### 6. Lodestar Calculation

Using those hourly rates to calculate the lodestar amount results in a lodestar of $97,360 and reduces the requested fee amount $23,985. As noted above, after calculating the lodestar amount, the court may adjust the lodestar upwards or downwards based on the circumstances of the case. The fee applicant bears the burden of documenting the appropriate hours expended on the litigation. Hensley, 461 U.S. at 437. The Court may adjust the reported hours if it finds that they are unreasonably excessive, redundant or otherwise unnecessary. Gates, 987 F.2d at 1397 (citation omitted).

Defendants submit that the lodestar amount must be reduced by the amounts charged for excessive time; time for unnecessary or unsuccessful projects; time for post-settlement trial preparation activities; time allocated to dismissed defendants; time for preparation of documents in this case that were cloned from documents used in other cases; and time spent on the recovery of fees. Defendants also assert that the aggregate amount of fees charged versus the result achieved is unreasonable and that plaintiff should not recover any fees and costs incurred after plaintiff rejected their settlement offer in April 2006, which would reduce her recovery to $880.00.

### 7. Overarching Issues

There are facts and circumstances present in this case that distinguish it from the typical FDCPA and FDCPA fee request and raise issues that are not fully addressed by the Lodestar methodology. The analysis supports but does not resolve defendants' objections or the Special Master's

Concerns. They include the following:

- Eskanos & Adler offered to settle the case for $500 in statutory damages, plus plaintiff's fees and costs at the time they were served and before engaging counsel. The offer was rejected. There is little if any evidence that Mr. Schwinn conveyed that or any other offer to plaintiff in violation of law and the Rules of Professional Conduct 3-510. The offer was rejected. 11 months, 495.5 hours and $120,000 in legal fees later, the case settled for an additional $1000.

- Plaintiff's deposition disclosed that she: thought she was suing defendants over harassing phone calls; did not recall receiving either of the collection that are the basis of her suit; did not know or recognize the names of the individuals she was suing or why she had sued them; did not know –nor seemingly care ---whether the signatories or any of the other individuals whose names appeared on the Eskanos & Adler letters were attorneys; was not injured as a result of any of the events described in the complaint; did not believe that she was suing for damages in the case; did not prepare any of the cease and desist letters that were sent to Eskanos & Adler under her signature; could not recall signing an engagement letter retaining Mr. Schwinn to represent her in the case; did not know Mr. Schwinn's hourly rate; and did not file or authorize Mr. Schwinn to file an FDCPA lawsuit against any other debt collector on her behalf. But see Navarro v. Fredrick Hanna & Associates, USDC Northern District of California, No. 06-00316 JW.

- There are two simple, straightforward claims alleged in the action, one of which was not disputed, that efficiently could have been resolved in fewer than two days.

- The amount of fees sought in the action and the disparity between the fees and the amount of the settlement are among, if not the highest of any in the history of the FDCPA. In response to the Special Master's question asking Mr. Schwinn if he knew of any awards of that magnitude, he referred to this court's May 21,

13

2007 order in Civitello v. 1st Credit of America, LLC, C 05-0494 in which the court granted an unopposed $98,924 fee request to an attorney following a trial that he had, as the court observed, "conducted in an efficient manner" in a case where "defendants had frustrated the entire process" A case that bears no resemblance to this.  Notably, Mr. Schwinn had not cited the order in his papers—because, he explained, he didn't think it was relevant."

- The conduct alleged in the complaint is not of the nature or gravity that caused Congress to enact FDCPA.  See *Baker v. G.C. Services corp.,* 677 F.2d 775, 777 (9th Cir. 1982)] ([t]he act (FDCPA) is designed to protect consumers who have been. victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists.' The basis of Plaintiff's claim under the FDCPA should be that defendant has acted unscrupulously in attempting to collect a debt, ... The focus of this inquiry is on the debt collector's conduct.) .

- When the Special Master asked Mr. Schwinn to identify what statutory or public purpose he served by pursuing this action, he responded, "Well, I guess I taught them (defendants) a lesson".  It would appear to be the other way around: FDCPA claims are typically settled before or shortly after the action is filed, usually at $1000 or less, plus attorney's fees and costs.  For what appear to be sound reasons, when Mr. Schwinn refused defendants' settlement offer in a case with one undisputed claim and another of doubtful merit, defendants chose to defend themselves.  That they would incur substantial legal costs of their own and risk paying Ms. Navarro's as well rather than accede to Plaintiff's demands, doesn't sound like a lesson.

- There is no indication of obstruction, delay or abuse by defendants that added to plaintiff's fees and costs.

- Mr. Schwinn's activities in the case, and his billing practices, appear calculated to maximize his fees and many cannot be justified.

14

- Mr. Schwinn billed approximately 340 hours of his time on the case in a period of less than a year. He informed the Special Master that he typically handles 300 or more cases. Presumably many are small bankruptcy matters that require small amounts of time, but it does cast some doubt about the integrity of the fee application.

During the proceedings on the fee application, the Special Master asked Mr. Schwinn if he would provide a copy of his retainer and fee agreement with Ms. Navarro. Mr. Schwinn questioned the relevancy of the agreement but agreed to produce it, which he did. In fact, the engagement agreement is not only relevant; it's dispositive. A review of the agreement discloses that (1) there is no provision for Ms. Navarro to receive any money or other benefit from the lawsuit; (2) Ms. Navarro, whom Mr. Schwinn had just taken through a bankruptcy, is responsible for all of Mr. Schwinn's attorney's fees and costs in the case, at his standard rates and charges, while Mr. Schwinn is entitled to all the attorney's fees and costs recovered in the case; (3) Mr. Schwinn shows his hourly rate at $300, which he falsely characterizes as a "lower fee than would otherwise be charged by Consumer Law Center" and (4) Mr. Schwinn fails to disclose, much less explain the relative advantages or disadvantages of contingent fee and other alternative billing arrangements, as the State Bar Rules requires in a consume. See Rules of Professional Conduct 4-200. The agreement is unconscionable and unenforceable. In the Northern District, the conduct of counsel is governed by the Rules of Professional Conduct of the State Bar. Schueneman v. 1st Credit of American, Slip Copy, 2007 WL 169708 (N.D, Cal (1977) (Patel, J.).

In short, these and other facts establish that Ms. Navarro has no stake in this action and accordingly no standing to recover fees and costs.

### 8. Lodestar Analysis

Based on the conclusion just described, the Lodestar analysis is irrelevant and unnecessary. However, if it did apply, it would not alter the result, for the reasons discussed below. The categories and reductions are not all-inclusive and are for illustrative purposes only.

- *Standard*

Plaintiff bears the burden of submitting evidence justifying the hours claimed to have been expended. Hensley, *supra*, 461 U.S. at 433.. An entry-by-entry analysis of the fees requested is not necessary to determine the lodestar. Rather than weighing the reasonableness of each

individual time entry, the district court may exclude excessive and unreasonable hours from a fee request by making an across-the-board reduction in the amount of hours. Ferland, supra, 244 F.3d at 1150-51 (flat percentage reduction of fee request permissible if based on expressed reasons).)

- ***Excessive Time Charges/Billing Practices***

Examples:  Mr. Schwinn bills in six-minute increments but doe not aggregate tasks. Thus the time spent reading and responding to an email message would be billed at a minimum of 12 minutes regardless of the time spent on each task.  Mr. Schwinn billed $300/hr. for local travel time.  Mr. Schwinn cloned documents from other cases, often with minor changes, but his billings do not fully account for the time -savings.

- ***Unnecessary Projects***

Examples: Motion to Determine Confidential Status of Documents.  Plaintiff moved to determine the confidential status of documents without need or justification. Fees. $6250.  By contrast, defendants spent 4.3 hours opposing the motion.  The motion was not heard by the Court and was decided after the action was settled. Multiple Motions to Compel. (54.6 hours). Plaintiff brought three separate motions to compel. None appears to have been necessary or warranted. For example, one motion was to compel addresses and phone numbers of employees of Eskanos & Adler that may be witnesses. Notably, after receiving the information, plaintiff never used any of it.  The Special Master would disallow 75% of the time billed to the motions from the Lodestar.

Videotaping Depositions.  Mr. Schwinn charged Ms. Longo's time to videotape depositions at a rate of $125/hr. The activity was unnecessary and unproductive and the charges were excessive. Apart from the facts that the witnesses would all be available at trial and Ms. Longo was qualified to video tape deposition testimony for use at trial, Mr. Schwinn had never before tried a case of this nature and based on the timing of the settlement does not appear to have intended to try this one.  All the charges for this activity would be deducted from the Lodestar,

- ***Trial Preparation***

The parties agreed to the terms of the settlement on February 27, 2007 but plaintiff's counsel continued to prepare the case for trial.  Mr. Schwinn charged 23.7 hours in trial preparation activities subsequent to the settlement date.  In his reply to defendants' opposition the fee motion, Mr.

Schwinn asserted that he was required by the Local Rules or Standing Orders to continue to prepare for trial until the settlement agreement was signed. Mr. Schwinn acknowledged to the Special Master that he had never tried a case of this nature.

Given that both parties acknowledge that they had a firm settlement on February 27, Mr. Schwinn's concerns likely could have been resolved by a conference call to the court. Defendants reasonably argue that the Lodestar amount should be reduced by the amount of charges after that date. The Special Master agrees.

- ***Motions for Summary Judgment***

Mr. Schwinn billed a total of 134.9 hours in connection with the cross-motions for summary judgment. In contrast defense counsel billed the defendants 42.9 for all the motions. Plaintiff brought a motion for summary judgment on defendant's bona-fide error defense. Mr. Schwinn's decision to challenge the defense on a motion for summary judgment is curious because in addition to being a fact-laden issue with dim prospects for summary resolution, it is an <u>affirmative</u> defense, for which defendants would have had the burden of proof but plaintiff assumed by bringing the motion. Not surprisingly, the court denied it. Mr. Schwinn billed 45.1 hours work on a motion that was unnecessary, unwise and futile. Notably, Mr. Schwinn's moving papers were substantially identical to papers he filed on the same issue in another case. The fees charged for this motion were not reasonable and would not be allowed. .

Mr. Schwinn billed an additional 58.4 hours on a motion for summary judgment on the merits and another 25.8 hours opposing defendants' cross-motions on the same issues.   With the exception of granting summary judgment establishing that that Eskanos & Adler sent the two collection letters to plaintiff, which defendants never disputed, the court denied all of plaintiff's summary judgment motions. Mr. Schwinn's fees for the summary judgment motions are unreasonable and would be deducted from the Lodestar.

- ***Attorney's Fee Motion***

Plaintiff's counsel billed 64 hours for work on the attorney fee motion. Given the circumstances of this case, the Special Master would deduct all the fees for the time on this motion from the Lodestar.

17

### 9. Costs

The Special Master would disallow all costs allocable to the disallowed tasks and projects for the same reasons that the Special Master is disallowing all fees, the Special Master disallows all costs

### 10. Considerations for the Court

There are at least two issues that have arisen in this matter that were not anticipated at the time the Special Master was appointed and are not the province of the Special Master to resolve – The first is whether the facts and circumstances discussed in this ruling warrant or require an investigation into possible violations of law, Rules of Professional Conduct or Rules of the Court. The second is whether there is sufficient evidence to find or, alternatively, to issue an order to show cause to determine whether plaintiff's claims were brought in "bad faith and for the purpose of harassment, which would entitle defendants to recover their attorney's fees and costs for defending the claims in this case, as the FDCPA provides (15 U.S.C. § 1692k(a)(3)) and, if so, whether they would be recoverable from plaintiff's attorney.

### RULING AND RECOMMENDATIONS

Having reviewed the papers and considered the arguments advanced by counsel and the applicable law, the Special Master makes the following determinations, rulings and recommendations:

1. The reasonable hourly rates for attorney's and law clerks with comparable skill and experience to Fred W. Schwinn and Jovanna Longo, in FDCPA actions involving issues of comparable complexity to the issues in this case, are $250/hr. for Mr. Schwinn and $75/hr. for Ms Longo. The Special Master approves those fees for legal services performed in this matter,

2. Multiplying the approved rates by the total number of hours shown in the fee application yields a Lodestar of $97,360, before adjustments. The Lodestar is excessive and unreasonable and will not be allowed.

3. Plaintiff does not recall ever receiving, did not rely on and suffered no injury as a result of the collection letters that are the basis of the claims in this action, and has no stake in the outcome. Accordingly, plaintiff had no standing to bring this action or recover attorney's fees and costs. Plaintiff's motion for attorney's fees and costs is therefore **DENIED.**

4. By reason of the foregoing, a lodestar analysis is not necessary. If the lodestar analysis

were used, the result would be the same.  All of the attorney's fees and costs in this case were unreasonable and excessive because plaintiff had no right to bring the action and incur any fees and costs.  Accordingly and as a second and alternative grounds, Plaintiff's motion for attorney's fees and costs is therefore **DENIED.**

      5. The court should determine whether the facts and circumstances discussed in this ruling warrant an investigation into possible violations of law, Rules of Professional Conduct or Rules of the Court.  The Court should consider keeping the fee application proceedings open pending a determination whether plaintiff's claims were brought in "bad faith and for the purpose of harassment", which would entitle defendants to recover their attorney's fees and costs for defending the claims in this case.

Dated: _____       _____

                                                      Marc P. Fairman, Special Master

### ORDER

The Court having reviewed and considered the Special Master's Ruling and Recommendation and having satisfied itself that it should be approved and adopted as the order of this Court; and having also considered matters relating to the Special Master's compensation,

**IT IS HEREBY ORDERED AS FOLLOWS**:

1. The Special Master's Ruling and Recommendation is hereby **ADOPTED.**

2. The fees and costs of the Special Master shall be paid by Plaintiff, as follows.  Within ten days of the date of this order, the Special Master shall submit his final billing to the parties, with a copy to the Court.  The parties shall serve and file any objections no later than ten (10) days after the date of mailing as shown on the proof of service.  Absent any objection, the billing shall be deemed approved by the Court and shall be paid no later than ten (10) days after the deadline for the filing of objections

SO ORDERED:

Dated: \_\_November 26, 2007\_       _____
                                            Honorable William H. Alsup
                                            United States District Judge